IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

PHARMABIODEVICE CONSULTING, LLC,

    Plaintiff

v.

LAVERNE EVANS,

    Defendant.

No. 8:14-cv-00732 (PWG)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

This case belongs in a U.S. District Court in the State of Maryland. Plaintiff is a Maryland company with its principal place of business in Gaithersburg, Maryland. Charity Ogunsanya (Ogunsanya) is the owner and Chief Executive Officer of the company. Defendant purposely sought out the Plaintiff in Maryland and entered into an Independent Consultant Agreement ("the agreement") with Plaintiff in Gaithersburg, Maryland. The agreement specifically called for a choice of law provision in Maryland. (Doc 1-1, p. 9) Defendant obtained revenue from the state of Maryland. (Ogunsanya affidavit)

On March 12, 2014, Plaintiff filed a civil complaint for Breach of Non-Solicitation Agreement, Breach of Confidentiality Agreement, Tortious Interference with Business Relationships, and Fraud. On April 21, 2014, Defendant filed an Answer and Affirmative Defenses. On April 22, 2014, Defendant filed her Motion to Dismiss and Motion for Judgment on the Pleadings for Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief Can be Granted.

1

PDF processed with CutePDF evaluation edition www.CutePDF.com

## **ARGUMENT**

### A. MOTIONS TO DISMISS

According to Fed. R. Civ. Proc. 12(b)(6), a court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint, and not the facts that support it. *Neitzeke v. Williams*, 490 U.S. 319, 326-27 (1989). The Fourth Circuit has stated, [A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Rule 8(a) of the Fed. R. Civ. Proc. provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. In *Bell Atl. Corp. v. Twombly*, 127 S. Ct. at 1974, the Court cautioned that it was not holding plaintiffs to a "heightened fact pleading of specifics." Instead, the court was merely holding plaintiffs to the same standard required by Rule 8(a); that is, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

### B. THE COURT HAS SUBJECT MATTER JURISDICTION

It is a well settled doctrine in civil procedure that a party seeking to invoke federal diversity jurisdiction does not have to prove that the amount in controversy exceeds $75,000. All she has to show is that there is some possibility that that much is in question. According to Rule 18 of Title VI of the Federal Rules of Civil Procedure, a party asserting a claim may join, as independent or alternative claims, as many claims as it has against an opposing party. If a single

plaintiff has two unrelated claims against a single defendant, she may sue in federal court if the aggregate of the claims exceeds $75,000. The value of all the claims are added together in determining whether the jurisdictional amount is met. Even if a plaintiff does not have any single claim worth more than $75,000, she may add together all of his claims against a single defendant. So long as the claims against a single defendant total more than $75,000, the amount in controversy requirement is satisfied.

Count I of the complaint is valued at $50,000. Count II is valued at an amount that exceeds $100,000, with punitive damages valued at $300,000. Count III of the complaint is valued at an amount that exceeds $100,000 with punitive damages valued at $300,000. Count IV is valued at $62,500, plus punitive damages. The aggregate value of all claims is equivalent to $912,500, exclusive of interest and costs. Therefore, the amount in controversy exceeds $75,000, and the amount in controversy requirement is satisfied.

## C. THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT

When a court's personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In order for a court to exercise personal jurisdiction over a non-resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst*, 334 F.3d at 396. Although it is well-established that the outer limits of the Maryland long-arm statute are "co-extensive" with due process requirements, the Maryland Court of Appeals has noted that an examination under the long-arm statute remains a requirement of the

3

personal jurisdiction analysis. *Mackey v. Compass Mktg, Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006); *see also Carefirst*, 334 F.3d at 396-97; *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996); Md. Code Ann., Cts. & Jud. Proc. § 6-103 (Maryland long-arm statute). In order for the exercise of personal jurisdiction to comport with due process, a non-resident defendant must have sufficient "minimum contacts" with the forum state that requiring it to defend itself within the forum state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

1. <u>Maryland Long-Arm Statute.</u> Maryland jurisdiction extends over a party if the party transacts any business, or performs any character of work or service in Maryland; contracts to supply goods, food, services, or manufactured products in Maryland; caused tortious injury in Maryland by an act or omission in Maryland; regularly does or solicits business; engages in any other persistent course of conduct in Maryland or derives substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland, has an interest in, uses, or possesses real property in Maryland; or contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within Maryland. Md. Code Ann., Cts. & Jud. Proc. § 6-103 (b). Under any of the above circumstances, it can be concluded that the party availed itself the privilege of conducting activities in Maryland and had sufficient contact with Maryland to evoke jurisdiction.

In *Costar Realty Information v. Meissner*, 2009 WL 750216 (D. Md. Mar. 16, 2009), the District Court held that emails directed into Maryland, coupled with other activities, established personal jurisdiction over the Arizona-based defendant. Notably, Maryland courts have interpreted the "doing business" prong of its long-arm statute "as not requiring that a defendant ever be physically present in the state." *Id*. Thus, while this defendant had never entered

Maryland, contracting to use the plaintiffs' database and services, communicating via email and telephone, and repeatedly accessing the plaintiffs' Maryland-based servers, taken together, satisfied the "doing business" prong of Maryland's long-arm statute. *Id.* at \*5. The court discredited the defendant's argument that she was not aware her activities were directed into Maryland, because the plaintiffs' website indicated its Maryland address.

At all times relevant to this Complaint, Evans purposefully and regularly solicited Charity Ogunsanya, a Maryland resident and owner of Pharmabiodevice, also a Maryland company, to persuade Ogunsanya to provide an employment opportunity for Evans. Evans purposefully and regularly initiated telephone calls and emails to Plaintiff in Maryland, and mailed documents to Plaintiff soliciting work in Plaintiff's company. Evans realized substantial revenue as result of her initiation of and regular solicitation of Plaintiff in Maryland. Evans knowingly engaged in conduct, as further described herein, that resulted in substantial injury in Maryland. (Ogunsanya affidavit)

2. <u>Due process requirements of the Fourteenth Amendment.</u>

Due process requires that a nonresident defendant have minimum contacts with the forum state to make the exercise of jurisdiction reasonable and just according to traditional conceptions of fair play and substantial justice. *A. F. Briggs Co. v. Starrett Corp. Me.*, 329 A.2d 177 (Me. 1974). The contacts must be such as to make it reasonable, in the context of our federal system, to require a defendant to defend the suit brought there. Where contact has been casual or isolated, defending a suit away from a defendant's home has been thought to lay too unreasonable a burden on it. However, even single or occasional acts may, because of their nature, quality and circumstances, be deemed sufficient to render a defendant liable to suit. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) held that to exercise personal jurisdiction, there must be:

5

(a) Contact with the forum (minimum contacts), which is established by both purposeful availment and foreseeability; (b) Fairness, and cannot offend "traditional notions of fair play and justice."

Purposeful availment requires that the contacts with the forum state cannot be accidental. Defendant must reach out to the forum in some way, such as to make money there or use the roads there. The court must find that through these contacts the defendant *purposefully availed* herself "of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Foreseeability requires that it be foreseeable that the defendant's activities make her amenable to suit in that forum. The defendant must know or reasonably anticipate that her activities in the forum render it foreseeable that she may be "hailed into court" there.

There are several factors relevant to a determination of whether jurisdiction would be fair:

(a) the claim must be related to the contact, or must arise out of the transaction in the forum to have specific jurisdiction, (b) the forum does not have to be the best available, so long as it is not "so gravely difficult and inconvenient that a party is unfairly put at a severe disadvantage in comparison with his opponent, and (c) the forum state's interest for providing redress for its residents.

### D. PLAINTIFF HAS BROUGHT FORTH SUFFICIENT FACTS TO ESTABLISH ITS CLAIM FOR BREACH OF CONTRACT, TORTIOUS INTEREFERENCE WITH BUSINESS RELATIONSHIPS AND FRAUD

#### 1. Law of Breach of Contract

Md. COMMERCIAL LAW Code Ann. § 22-701 (2012) provides for breach of contract

in Maryland. § 22-701. Breach of contract; material breach provides:

(a) In general. — Whether a party is in breach of contract is determined by the agreement or, in the absence of agreement, this title. A breach occurs if a party without legal excuse fails to perform an obligation in a timely manner, repudiates a contract, or exceeds a contractual use term, or otherwise is not in compliance with an obligation placed on it by this title or the agreement. A breach, whether or not material, entitles the aggrieved party to its remedies. Whether a breach of a contractual use term is an infringement or a misappropriation is determined by applicable informational property rights law.

(b) Material breach. — A breach of contract is material if:

(1) The contract so provides;

(2) The breach is a substantial failure to perform a term that is an essential element of the agreement; or

(3) The circumstances, including the language of the agreement, the reasonable expectations of the parties, the standards and practices of the business, trade, or industry, and the character of the breach, indicate that:

(a) The breach caused or is likely to cause substantial harm to the aggrieved party; or

(b) The breach substantially deprived or is likely substantially to deprive the aggrieved party of a significant benefit it reasonably expected under the contract.

(c) Cumulative nonmaterial breaches. — The cumulative effect of nonmaterial breaches may be material.

2. **Law of Fraud**

Fraud, a recognized tort in Maryland, is a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment. *Black's Law Dictionary* (4th pocket ed. 2011). In Maryland, in order to state a cause of action for fraud or

7

deceit, a plaintiff must allege facts disclosing (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 195-196 (Md. 1995).

### 3. Law of Tortious Interference

Maryland recognizes two types of tortious interference claims: "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628 (2003). The two claims share the same elements – intentional acts done with the unlawful or wrongful purpose to cause damage to plaintiff's lawful business with actual damage resulting – and can arise only out of the relationship between three parties, the two parties to the contract and a separate interferer. The three-party relationship applies equally in the instance of a business relationship where no express contract exists; however, in such situations, the right of an individual to interfere is treated more broadly.

### E.   ANALYSIS OF STATED CLAIMS

Plaintiff's complaint alleges that on or about September 6, 2013, Defendant Laverne Evans entered into an Independent Consultant Agreement ("the agreement") with plaintiff. Plaintiff's gross profit was $1,000 for each week Defendant provided services to Coldsream through Oxford. The plaintiff and Oxford Global Resources, Inc. ("Oxford") entered into an Agreement for Independent Consulting Firm's Services on August 7, 2013. Plaintiff was paid by Oxford at a rate of $70 per hour.

On or about December 11, 2013, Evans notified plaintiff that she was resigning effective December 31, 2013. After Evans left plaintiff's employ and, notwithstanding her agreement with plaintiff, she went to work for Coldstream, a third-party client of the plaintiff, on or about January 2014, in violation of Defendant's Non-Solicitation Agreement with the plaintiff, contained in the aforementioned agreement. (Doc 1-1, p. 1) As a proximate cause of the Defendant's breach of the Non-Solicitation Agreement, Plaintiff has suffered identifiable monetary damage such as loss of market share and revenue in the amount of $1,000 per week.

Additionally, Defendant breached the Confidentiality Agreement she signed on or about September 6, 2013, when on or before November 15, 2013, intentionally and without the consent of the plaintiff, Evans communicated her rate of pay to Oxford and to Coldstream, breaching her duty to keep in confidence information related to salary, compensation, benefits, policies, procedures, contracts and business matters of Pharmabiodevice for her own benefit. (Doc 1-1, p. 2) On December 7, 2013, Plaintiff warned Oxford not to hire Defendant directly, as such would be construed as tortuous interference with contract. Several emails and telephone calls were exchanged between Oxford and the Plaintiff. Oxford expressed it would no longer do business with the Plaintiff.

Plaintiff seeks to amend her complaint to include the following allegations. As a proximate cause of Defendant's breach of the Non-Solicitation and Confidentiality Agreement, Coldstream would have kept the Defendant as a consultant through the Plaintiff, since Oxford indicated that Coldstream was very happy with the Defendant's work and wanted to hire her directly to continue to provide services to Coldstream. Furthermore, as a result of the Defendant's breach of the said agreements, Plaintiff's relationship with Oxford soured. Notwithstanding Defendant's agreement with Plaintiff, Oxford expressed its intent to hire

9

Defendant directly at a rate of $55 per hour. Oxford knew the Defendant's rate of pay was $45, a fact that Plaintiff never revealed to Oxford, and which Oxford only learned through the Defendant.

Plaintiff seeks to amend her complaint further to reflect that there have been at four lost opportunities since Evans' breach. Specifically, Oxford thereafter began to recruit the Plaintiff's workers directly. Plaintiff discovered this from its workers, who have complied with their Non-Solicitation and Confidentiality Agreements with Plaintiff, who have informed Plaintiff of the direct recruitment from Oxford. Oxford has not contacted Plaintiff directly for these employees' services, despite Plaintiff's efforts to communicate with Oxford to provide their services. As a result, actual damages may be closer to five times the amount plead, or $5000 per week, for a total of $260,000. Full discovery will be able to determine the exact amount of damages. Since the events at issue in this complaint, Oxford has provided no additional contracts to the Plaintiff.

Plaintiff's complaint alleges that on or about December 7, 2013, Defendant represented to Plaintiff that she had not entered into any new contract with Oxford or Coldstream. On or about December 11, 2013, Defendant submitted her letter of resignation to the Plaintiff by email with an effective date for December 31, 2013. Defendant represented that in order to eliminate any possible legal impact to Coldstream and/or Oxford, defendant *understood* that she could not work with or for them for a period of one year. Had Plaintiff known Defendant was planning on working for Coldstream directly, Plaintiff would have warned Coldstream of the potential Tortious Interference with Contract, and would have found Defendant another contract to work on. Subsequently, in January 2014, Plaintiff learned through a Coldstream employee that Defendant was indeed working for Coldstream. On January 30, 2014, plaintiff requested Evans to pay the $50,000 finder's fee, payable in weekly installments in the amount of $1,000 per week

on each Friday via direct deposit. Plaintiff requested that the first payment be received on or before February 7, 2014. Defendant did not respond to the demand for payment. As a result of the Defendant's fraudulent acts, Plaintiff is entitled to $50,000.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss. The complaint in this case sets forth enough detail to allow the plaintiffs to conduct discovery. The complaint, in regard to personal jurisdiction, is not clearly frivolous, and the court cannot help but notice the corresponding thinness of the Defendant's affidavit in support of her motion to dismiss on jurisdictional grounds.

Dated: May 9, 2014

Kathlynne Ramirez, Esq. LLC
142 Windbrooke Circle
Gaithersburg, Maryland 20879
Tel: (240) 372-1832
Fax: (301) 216-0615
kramirez@kramirezlaw.com
(Federal Bar No. 28792)
Attorney for Plaintiff
Pharmabiodevice Consulting, LLC