IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| PHARMABIODEVICE CONSULTING, LLC | * |
| Plaintiff, | * |
| v. | *    Case No.: GJH-14-00732 |
| LAVERNE EVANS | * |
| Defendant. | * |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

This Memorandum and Order addresses Defendant's Motion to Dismiss for Lack of Jurisdiction, ECF No. 17, and supporting memoranda, ECF Nos. 18, 24; and Plaintiff's Opposition to Defendant's Motion to Dismiss, ECF Nos. 23, 23-2. I find that a hearing is unnecessary in this case. *See* Local Rule 105.6. For the reasons stated below, Defendant's Motion to Dismiss for Lack of Jurisdiction is GRANTED.

**I.    BACKGROUND**

Pharmabiodevice Consulting, LLC ("Plaintiff") brought this action against Laverne Evans ("Evans"), a former independent contractor of Plaintiff, alleging various breach of contract and tort claims arising from their soured business relationship. Plaintiff is a consulting firm that provides staffing support in the pharmaceutical, biotechnology, and medical device industries with its principle place of business in Gaithersburg, Maryland. ECF No. 1 at ¶ 5.

1

Evans is a resident of Florissant, Missouri, and, at all times relevant to this complaint performed all of her work responsibilities in Lexington, Kentucky. *Id.* at ¶ 6; *see also* ECF No. 23-1 at ¶ 14; ECF No. 17 at ¶ 4; ECF No. 17-1 ¶ 2.

On September 6, 2013, Evans entered into a consulting agreement ("Consultant Agreement") with Plaintiff. *Id.* at ¶ 9. As part of that agreement, Evans agreed to provide independent consulting services to Plaintiff's clients through staffing placements made by Plaintiff. *See* ECF No. 1-1 at ¶ A. For successful placements, Evans agreed to pay Plaintiff a $50,000 finder's fee. ECF No. 1 at ¶ 9. Evans' Consultant Agreement also contained a confidentiality provision that required Evans to treat information relating to her salary, compensation, and benefits as confidential. *Id.* at ¶ 19.

On September 16, 2013, Plaintiff successfully placed Evans at a company called Oxford Global Resources, Inc. ("Oxford"). ECF No. 23-1 at ¶ 16. That placement required Evans to work for a client of Oxford's known as Coldstream Labs ("Coldstream"). ECF No. 1-2 at ¶ 1. Evans' placement with Oxford/Coldstream was to span from September 16, 2013 through December 31, 2013. *Id.* During that time, Evans performed all of her work for Coldstream in Lexington, Kentucky and performed no work for Coldstream, Oxford, or Plaintiff in Maryland. *See e.g.*, ECF No. 23-1 at ¶ 14; ECF No. 17 at ¶ 4; ECF No. 17-1 ¶ 2. In fact, at the time this lawsuit was filed, Evans had not been in Maryland for approximately three years. ECF No. 17-1 ¶ 4. Nor did Evans have any meaningful or sustained financial dealings in Maryland. *Id.* Indeed, Evans' only financial connection to Maryland involved her cashing two checks that were sent by Plaintiff from Maryland to Evans' home in Missouri for compensation related to her work for Coldstream. *See* ECF No. 23-1 at 9-11; *see also* ECF No. 17-1 at ¶ 4. Aside from receiving those checks, Evans only other contact with Maryland involved periodic telephone

2

calls and e-mails with the owner of Pharmabiodevice, Charity Ogunsanya ("Ogunsanya"). *See* ECF No. 23-1.

Plaintiff was paid $70,000 per hour by Oxford for the work performed by Evan at Coldstream. *Id.* at ¶ 10. In turn, Evans was paid biweekly by Plaintiff in the amount of $45 per hour. ECF No. 1 at ¶ 9. Sometime in mid-November 2013, Evans communicated her hourly rate to both Oxford and Coldstream, purportedly in violation of her Consultant Agreement. *Id.* at ¶¶ 20-21. Oxford then notified Plaintiff that it would terminate Evans' services on November 18, 2013 due to unexpected expenses. *Id.* at ¶ 23. Shortly thereafter, Oxford began recruiting Evans as a direct employee promising to pay her at a rate of $55 per hour – ten dollars more than the rate paid to Evans by Plaintiff but still less than the rate paid by Oxford to Plaintiff. *Id.* at ¶ 28. Plaintiff, through counsel, immediately informed Evans that her Consultant Agreement prohibited her from working for Oxford or Coldstream. *Id.* at ¶¶ 26, 29. On December 7, 2013, Evans confirmed with Plaintiff's counsel that she would not be entering into a new contract with Oxford or Coldstream and presumably continued to perform under the original agreement. *Id.* at ¶ 29.

On December 10, 2013, Plaintiff informed Evans that Coldstream had reduced its contracted hourly rate with Oxford, thereby reducing Oxford's contracted rate with Plaintiff. *Id.* at ¶ 30. As a result, Plaintiff sought to reduce Evans' hourly rate from $45 to $35. *Id.* Evans refused to accept the proposed rate reduction. *Id.* The following day, Evans notified Plaintiff that she was resigning as a consultant from Plaintiff effective on December 31, 2013. *Id.* at ¶ 15. On January 30, 2014, Plaintiff requested that Evans pay the $50,000 finders' fee for placing her at Oxford. *Id.* Evans refused. *Id.*

3

On March 12, 2014, Plaintiff instituted this action against Evans raising various contract and tort claims. First, Plaintiff contends Evans breached her Consultant Agreement by (1) failing to pay Plaintiff the $50,000 finder's fee for her placement at Oxford and (2) disclosing her confidential salary information to Oxford and Coldstream. *Id.* at ¶¶ 4-34. Second, Plaintiff contends that Evans tortiously interfered with its existing business relationships with Oxford and Coldstream by soliciting their business directly in contravention of her Consultant Agreement. *Id.* at ¶¶ 35-39. Finally, Plaintiff contends that Evans' actions amounted to common law fraud. *Id.* at ¶¶ 40-44.

Evans has moved to dismiss Plaintiff's complaint on various grounds, including that the Court lacks personal jurisdiction over Evans given her lack of contacts with the State of Maryland. *See* ECF No. 17. For the reasons discussed herein, the Court agrees that it lacks personal jurisdiction over Evans. Accordingly, Plaintiff's complaint is dismissed.[1]

## II.   STANDARD OF REVIEW

A motion to dismiss for lack of personal jurisdiction arises under Fed.R.Civ.P. 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2). *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351, at 274–313 (3d ed.2004, 2012 Supp.). Rather, the district court

---

[1] Because the Court grants Evans' motion to dismiss for lack of personal jurisdiction, it is not necessary to reach the other grounds argued by Evans for dismissing Plaintiff's complaint, namely that the Court lacks subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and that Plaintiff has failed to state claims upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). *See* ECF No. 18 at 5-13.

may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th. Cir. 2009). In that circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*

"In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "district courts are not required to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). However, "[a] threshold prima facie finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (citation omitted).

Alternatively, the Court may, in its discretion, permit limited discovery as to the jurisdictional issue. *See Mylan Laboratories*, 2 F.3d at 64. Then, "the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. Plaintiff, however, has not requested jurisdictional discovery, nor is such discovery necessary given the numerous exhibits and affidavits submitted by the parties.

### III. DISCUSSION

#### A. Request to Amend

Under Fed.R.Civ.P. 15(a), a party may amend its pleading as a matter of course if less than twenty-one days have passed since service of a motion to dismiss. *See* Fed.R.Civ.P 15(a)(1)(B). Here, Plaintiff has sought to amend its complaint within the permitted twenty-one days by attempting to add a number of allegations to its complaint by including them in the body of its opposition to Evans' motion to dismiss. *See* ECF No. 23-2 at 9. Although inartful and not technically filed as a First Amended Complaint, the Court will accept Plaintiff's purported "amendment" and will incorporate the additional allegations into Plaintiff's complaint as if they had originally been included therein. It should be noted, however, that none of these additional allegations do anything to cure the jurisdictional deficiencies that plague Plaintiff's complaint and that necessitate its dismissal.

#### B. Personal Jurisdiction

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located. *Carefirst*, 334 F.3d at 396; *see also* Fed.R.Civ.P. 4(k)(1)(A). Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* It is thus appropriate to begin with an analysis of Maryland's Long-Arm Statute. *See Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141, n. 6 (2006) (although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to dispense with analysis under the long-arm statute").

### 1. Maryland Long–Arm Statute

The Maryland Long-Arm Statute provides, in relevant part, that:

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

    (1) Transacts any business or performs any character of work or service in the State;

    (2) Contracts to supply goods, food, services, or manufactured products in the State;

    (3) Causes tortious injury in the State by an act or omission in the State;

    (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

    (5) Has an interest in, uses, or possesses real property in the State; or

    (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md.Code Ann., Cts. & Jud. Proc. § 6–103(b). "To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion." *Hausfeld v. Love Funding Corp.*, No. 14-0142, 2014 WL 1573009, at *2 (D. Md. Apr. 18, 2014); *see also Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D. Md. 2001); *Johansson Corp. v. Bowness Const. Co.*, 304 F. Supp. 2d 701, 704, n.1 (D. Md. 2004). Although Plaintiff fails to identify the applicable provision(s) of the Maryland Long-Arm Statute, it argues generally that jurisdiction is proper because "[Evans] caused tortuous [sic] injury in Maryland by an out-of-state act [and] regularly solicits business in Maryland and derives substantial revenue from services in Maryland." ECF No. 23 at 1. Thus, while Plaintiff does not explicitly invoke a specific provision of the Maryland Long-Arm Statute, when the allegations are viewed in the light most favorable to Plaintiff, it is

clear that Plaintiff is attempting to rely on § 6–103(b)(4) as its sole basis for personal jurisdiction under the Maryland Long-Arm Statute. *See* Md.Code Ann., Cts. & Jud. Proc. § 6–103(b)(4) (a court may exercise personal jurisdiction over a person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State").

Essentially, Plaintiff argues that jurisdiction under subsection (b)(4) is proper because "Evans purposefully and regularly solicited Charity Ogunsanya, a Maryland resident and owner of Pharmabiodevice, also a Maryland company, to persuade Ogunsanya to provide an employment opportunity to Evans" by "regularly initiat[ing] telephone calls and emails to Plaintiff in Maryland . . . ." ECF No. 23-2 at 5. To support this contention, Plaintiff submitted a five-page affidavit from Ogunsanya, as well as numerous exhibits, which purportedly reflect Evans' contacts with Maryland. These contacts include two telephone calls and a handful of e-mails exchanged between Evans and Ogunsanya. *See* ECF No. 23-1. However, isolated telephone calls and e-mails made from outside Maryland into the state, without more, are insufficient to demonstrate that Evans regularly solicited business in Maryland for purposes of establishing personal jurisdiction over an out-of-state defendant like Evans. *See e.g.*, *Stover v. O'Connell Associates, Inc.*, 84 F.3d 132, 137 (4th Cir. 1996) (recognizing that "the use of a telephone to facilitate transactions between remote locations serves as an *alternative* to presence [and] [t]o conclude that such activity establishes presence in a state would upset generally held expectations"); *Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 354 (D. Md. 1997) (no long-arm jurisdiction where "'contacts' consist entirely of telephonic (voice and facsimile) exchanges and mail correspondence from without the state"); *Leather*

*Masters (PVT) Ltd. v. Giampier Ltd.*, 836 F.Supp. 328, 331 (D. Md. 1993) ("without more, communications made from outside the State to a Maryland resident are not enough to justify the exercise of personal jurisdiction over an out-of-state defendant"); *Coating Engineers, Ltd. v. Electric Motor Repair, Co.*, 826 F. Supp. 147, 149 (D. Md. 1993) (defendant's telephone conversations with party in Maryland did not constitute purposeful activity within Maryland to confer jurisdiction under the Maryland long arm statute); *Craig v. General Finance Corp.*, 504 F.Supp. 1033, 1038–39 (D. Md. 1981) (in personam jurisdiction does not exist over person who placed various telephone calls and mailed letters to forum state).[2]

    Moreover, there is nothing in Ogunsanya's affidavit, the corresponding exhibits, or any of Plaintiff's filings that refutes the now undisputed facts that Evans (1) performed all of her work in Lexington, Kentucky (*see* ECF No. 17-1 at ¶ 2); (2) performed no work in Maryland (*id.*); (3) had no work obligations in Maryland (*id.* at ¶ 3); (4) had not been in Maryland in over three years (*id.* at ¶ 4); and (5) had no financial dealings in Maryland, aside from receiving two checks sent by Plaintiff from Maryland. *Id.*; *see also* ECF No. 18 at 2. Under these facts and circumstances, Evans' periodic and isolated e-mails and telephone calls into Maryland made

---

[2] Plaintiff's reliance on *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757 (D. Md. 2009) to support its argument that Evans' out-of-state e-mails and telephone calls directed into Maryland are sufficient to confer personal jurisdiction is misplaced. In *CoStar*, the out-of-state defendant's contacts with Maryland were far more meaningful and substantial than Evans' periodic e-mails and telephone calls to Plaintiff. For example, in addition to e-mails and telephone calls, the out-of-state defendant in *CoStar* entered into a licensing agreement with the plaintiff that contained a forum selection clause that specifically stated that the "federal and state courts located in the State of Maryland shall be the exclusive jurisdiction for any action brought against [defendant]." *Id.* at 764. Furthermore, the out-of-state defendant also "repeatedly accessed [p]laintiffs' Maryland-based servers" and the unauthorized sharing of that access was the basis of plaintiff's complaint. *Id.* at 766. These contacts with Maryland are far more extensive than the two telephone calls and periodic e-mails relating to work done entirely outside of Maryland that Plaintiff relies on to establish personal jurisdiction over Evans. *CoStar* is therefore unhelpful to Plaintiff.

from outside the state, without more, are wholly insufficient to establish personal jurisdiction over Evans as an out-of-state defendant.

This Court also lacks personal jurisdiction over Evans for Plaintiff's failure to comply with Section 6–103(a) of Maryland's Long-Arm Statute. Section 6–103(a) requires that a plaintiff's cause of action arise from the defendant's contacts with the forum state. *See* Md.Code Ann., Cts. & Jud. Proc. § 6–103(a) ("[i]f jurisdiction over a person is based solely upon [a] section [in the long-arm statute], he may be sued only on a cause of action *arising from* any act enumerated in this section") (emphasis added). This is not the case here: Pharmabiodevice's causes of action *do not* arise from Evans' fleeting contacts with Maryland. To be certain, the e-mails attached to Ogunsanya's affidavit do not directly relate to the facts underlying Plaintiff's complaint – namely, Evans' dealings with Oxford and Coldstream and the alleged improprieties that tainted those dealings. Instead, the e-mails (by and large) involve discussions between Evans and Ogunsanya concerning Evans' resume and employment goals. *See generally* ECF No. 23-1 at 14-38. Moreover, the e-mails were all sent between July 25, 2013 and September 15, 2013 – before Evans was even placed as a consultant at Oxford/Coldstream on September 16, 2013. *See* ECF No. 23-1 at ¶ 16.

Furthermore, far from describing "regular" telephone calls initiated by Evans into Maryland, Ogunsanya's affidavit provides only vague details about two telephone conversations that occurred between July 2013 and December 2013. Indeed, one of these conversations occurred sometime in July 2013 and was largely unrelated to the events underlying this litigation. *See* ECF No. 23-1 at ¶¶ 4-9. Accordingly, Pharmabiodevice's claims do not arise from Evans' isolated telephone calls and sporadic e-mails into Maryland as required by Section 6–103(a) of Maryland's Long-Arm Statute. These contacts are therefore insufficient to establish

personal jurisdiction over Evans under Maryland's Long-Arm Statute. *See Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 605 (D. Md. 2008) ("the fact that [defendants] may have placed several phone calls or sent several e-mails to Maryland is of little consequence because those calls were unrelated to the events underlying this litigation"); *Beyond Sys., Inc. v. Kennedy W. Univ.*, No. 05-2446, 2006 WL 1554847, at *6 (D. Md. May 31, 2006) (finding that defendants' unrelated e-mail "contacts do not satisfy (b)(1) [] because the statute also requires that the cause of action arise from the act enumerated in the section, *i.e.*, the transaction of business or performance of work or services").[3]

Finally, Plaintiff makes two additional jurisdictional arguments that must be addressed briefly. First, Plaintiff appears to contend that jurisdiction under § 6–103(b)(4) is proper because "Evans realized substantial revenue as a result of her initiation of and regular solicitation of Plaintiff in Maryland." ECF No. 23-2 at 5. To support this contention, Plaintiff attached to Ogunsanya's affidavit two checks she sent to Evans for services Evans performed pursuant to her Consultant Agreement. For jurisdiction to lie under the "substantial revenue" portion of § 6–103(b)(4), however, Evans must have "derive[d] substantial revenue from . . . services . . . used or consumed in [Maryland]." *See* Md.Code Ann., Cts. & Jud. Proc. § 6–103(b)(4). Even assuming that the revenue involved in this case ($9,427.50) amounted to "substantial revenue"

---

[3] As for the second call described in Ogunsanya's affidavit, it is unclear whether Evans even initiated this call. *See* ECF No. 23-1 at ¶ 26. For purposes of establishing personal jurisdiction under Maryland's Long-Arm Statute, the relevant focus is on the "persistent course of conduct" of the *defendant* (Evans), not the *plaintiff* (Pharmabiodevice). *See Gallman v. Sovereign Equity Grp., Inc.*, No. 11-2750, 2012 WL 2923170, at *6 (D. Md. July 17, 2012) ("The Court reiterates that it must focus on the 'persistent course of conduct' of the defendant, rather than the plaintiffs."). Regardless, even assuming Evans initiated the second call and that it related to the facts underlying this action, it would not change the Court's conclusion that, without more, Evans' isolated e-mail and telephone communications made from outside the State to a Maryland resident are not enough to justify the exercise of personal jurisdiction over an out-of-state defendant like Evans. *See Leather Masters (PVT) Ltd.*, 836 F.Supp. at 331.

for purposes of § 6–103(b)(4), it is undisputed that the services performed by Evans were not "used or consumed" in Maryland. *See e.g.*, ECF No. 23-1 at ¶ 14; ECF No. 17 at ¶ 4; ECF No. 17-1 ¶ 2. Indeed, Ogunsanya's affidavit even confirms that Evans performed her work for Coldstream "at her project location in Kentucky." ECF No. 23-1 at ¶ 28. Accordingly, Evans did not derive any revenue from services used or consumed in *Maryland*; rather, she derived revenue from services used or consumed in *Kentucky*. The "substantial revenue" portion of § 6–103(b)(4) is therefore inapplicable.

Next, Plaintiff argues in passing that this Court has personal jurisdiction over Evans because her Consultant Agreement contained a Maryland choice of law provision. *See* ECF No. 23 at ¶ 1. The inclusion of a choice of law provision, however, is just "one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that." *Consulting Engineers Corp.*, 561 F.3d at 281; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) ("[S]uch a [choice of law] provision standing alone would be insufficient to confer [personal] jurisdiction."). Given Evans' lack of relevant contacts with Maryland, the Court is not persuaded that the inclusion of a Maryland choice of law provision in Evans' Consultant Agreement evinces any intent on the part of Evans to submit herself to personal jurisdiction in the state whose law governs the interpretation of her Consultant Agreement. *See Consulting Eng'rs Corp.*, 561 F.3d at 281 (affirming district court's dismissal of lawsuit because plaintiff failed to demonstrate that defendants had sufficient contacts, despite the existence of a choice of law provision in a contract between the parties); *see also Indem. Ins. Corp. v. Jade Presents, LLC*, No, 13-2216, 2013 WL 5376592, at *1 (D. Md. Sept. 24, 2013).

2.  **Due Process**

Even assuming, *arguendo*, the Plaintiff satisfied the first condition necessary to establish personal jurisdiction over a nonresident defendant (*i.e.* applicability of the Maryland Long-Arm Statute), the inquiry would not end there. The Court must also consider whether the exercise of jurisdiction over Evans would violate the Due Process Clause of the Fourteenth Amendment. The Supreme Court has drawn a distinction between "specific" jurisdiction and "general" jurisdiction. General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum wholly unrelated to any contact it has with the forum, exists only where the foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). Specific jurisdiction, on the other hand, permits a court to exercise jurisdiction over a defendant when a cause of action arises out of the defendant's minimum contacts with the forum. *Id.* at 466 U.S. 414.

The level of "minimum contacts" necessary to confer general jurisdiction is significantly higher than that required for specific jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). Indeed, it is only where a defendant's in-state operation is "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" that it is proper for a court to exercise general jurisdiction over that defendant. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945). "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *Id.* at 317. "[B]road constructions of general jurisdiction should be generally disfavored," *Nichols v. G.D.*

*Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993), and courts will typically only assert general jurisdiction over nonresidents "who are essentially domiciled within the forum state." *Elec. Broking Servs., Ltd. v. E-Bus. Solutions & Servs.*, 285 F. Supp. 2d 686, 689 (D. Md. 2003) (quoting *Corry v. CFM Majestic, Inc.*, 16 F.Supp.2d 660, 663 (E.D. Va. 1998)). The question then "is whether a defendant's contacts with the forum state are so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state." *ESAB Group, Inc.*, 126 F.3d at 623.

Although Plaintiff makes no specific reference to notions of general jurisdiction in its pleadings, to the extent Plaintiff relies on general jurisdiction as its basis for personal jurisdiction over Evans, such an attempt fails. It is undisputed that Evans is domiciled in Missouri and, at the time this action was filed, had not even been to Maryland in approximately three years. Quite simply, Evans' contact with Maryland was most assuredly not continuous or systematic, but was, at most, isolated and sporadic. Under these circumstances, any attempt to base personal jurisdiction on principles of general jurisdiction would be borderline frivolous. *See Gallman v. Sovereign Equity Grp., Inc.*, No. 11-2750, 2012 WL 2923170, at *7 (D. Md. July 17, 2012) ("Plaintiffs contend that general jurisdiction over Barnes is proper based on her contacts with Plaintiffs, some of whom are Maryland residents. Given the pleadings and discovery materials before the Court, this assertion borders on the frivolous. Other than the e-mail and phone communications between Barnes and Gallman, Plaintiffs have provided no more than threadbare allegations regarding Barnes's contacts with Plaintiffs in Maryland.").

Furthermore, any attempt by Plaintiff to rely on specific jurisdiction as its basis for personal jurisdiction over Evans would fare no better. "Specific personal jurisdiction requires a tri-partite showing that: (1) the non-forum defendant purposely directed its activities toward

14

residents of the forum state or purposely availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, i.e. is consistent with 'fair play and substantial justice.'" *Cape v. von Maur*, 932 F. Supp. 124, 127 (D. Md. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985))

As an initial matter, aside from its threadbare recital of black letter law and its generic summary of *Int'l Shoe Co.*, 326 U.S. 310 (1945), Plaintiff makes virtually no attempt to satisfy this showing. *See e.g.*, ECF No. 23 at ¶ 1; ECF No. 23-2 at 5-6. But even when this Court views Plaintiff's allegations in the light most favorable and draws all reasonable inferences in its favor, Plaintiff still fails to make a prima facie showing that this Court has specific jurisdiction over Evans. As discussed, it is well-settled that periodic and isolated e-mails from an out-of-state defendant into Maryland, without more, will not rise to the level of purposeful availment for purposes of establishing specific jurisdiction under the Due Process Clause. *See Cape*, 932 F. Supp. at 128 ("Generally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process."). Moreover, Plaintiff's causes of action do not arise out of or result from the Evans' contacts with Maryland. Under these circumstances, it would be entirely unreasonable for this Court to exercise personal jurisdiction over Evans.

In light of the evidence before this Court, Plaintiff has not made a prima facie showing that jurisdiction is authorized under Maryland's Long-Arm Statute. Nor has Plaintiff made a prima facie showing of either general or specific personal jurisdiction. Finding that this Court

lacks personal jurisdiction, Defendant Evans' Motion to Dismiss for Lack of Jurisdiction (ECF No. 17) is GRANTED.[4]

## V.  CONCLUSION

For the reasons stated above, Defendant Evans' Motion to Dismiss for Lack of Jurisdiction (ECF No. 17) is GRANTED, and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

Dated: July 28, 2014                                              /S/
                                                                      George Jarrod Hazel
                                                                      United States District Judge

---

[4] Although the Court will dismiss the claims against Evans, that dismissal will be without prejudice to refiling in the proper forum. *See, e.g., Russell*, No. 12-2983, 2013 WL 3805118, at *4 (dismissing claims without prejudice where personal jurisdiction was lacking); *The Cleaning Auth., Inc. v. Neubert*, 739 F.Supp.2d. 807, 817 (D. Md. 2010) (same). Therefore, to the extent Evans seeks dismissal with prejudice, that request will be DENIED.